**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMER CASTILLO,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff WILMER CASTILLO ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax").

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendant.

2. Plaintiff alleges that Defendant Equifax (the "Equifax") reported inaccurate post-bankruptcy information, failed to maintain reasonable procedures to ensure maximum possible accuracy in the preparation of Plaintiff's consumer reports, in violation of 15 U.S.C. §§ 1681e(b).

3. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6. Plaintiff Wilmer Castillo ("Plaintiff") is a natural person who resides in Nassau County, New York.

7. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

9. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

## FACTUAL BACKGROUND

10. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

11. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

12. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

13. Equifax, one of the three major consumer reporting agencies in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

14. Equifax regularly obtains consumer bankruptcy information to include in consumer reports.

15. Equifax regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

16. The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

17. Equifax' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

18. Equifax know, or should have known, the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

19. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

20. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

21. Despite the availability of accurate consumer information, Equifax regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

22. Equifax regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

23. Defendant also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to communicate to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he or she did not deserve a discharge of a particular debt.[1]

24. Consumers have filed countless lawsuits and complaints with the FTC and Consumer Financial Protection Bureau against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

25. Thus, Defendant has been on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

26. Plaintiff filed a Chapter 7 Bankruptcy on February 25, 2025, in the United States Bankruptcy Court in the Eastern District of New York.

27. Plaintiff included in his bankruptcy petition his Bank of America account ending in *9811 (the "BOA Account").

28. Plaintiff received an Order of Discharge on May 30, 2025.

29. The BOA Account was a pre-petition debt for which Plaintiff's personal liability was eliminated upon entry of the Discharge Order.

30. Upon rescission, the BOA Account was required to be reported with a zero-dollar balance and a status reflecting no personal liability.

31. Equifax prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

32. Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as LexisNexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

33. Defendant is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

34. Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

35. Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

36. Despite the discharge order, Equifax continued reporting the BOA Account with a status of "charged off" with a balance of $355.

37. At all times pertinent hereto, Defendant's violations of the FCRA were willful, and carried out in reckless disregard for Plaintiff's rights as set forth under 15 U.S.C. §§ 1681e(b).

38. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

39. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

40. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

41. As a direct and proximate result of Defendant's willful and/or negligent failure to implement reasonable procedures to assure accruracy as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and the reputational harm that Plaintiff has suffered as a result of having this negative information attributed to him and disseminated to creditors. For example, Plaintiff has been denied credit opportunities due to this derogatory inaccuracy.

42. Plaintiff relies on the accuracy of his credit reports to obtain credit and housing. Because of Defendant's inaccurate reporting, Plaintiff's credit score has been unfairly lowered, resulting in denials of credit and difficulty obtaining financial products that would otherwise have

been available. The false derogatory information also undermines Plaintiff's reputation for financial responsibility and subjects Plaintiff to embarrassment and frustration each time his credit is reviewed or discussed with potential lenders.

43. Beyond financial consequences, the inaccurate reporting has caused Plaintiff substantial emotional distress, anxiety, and inconvenience. Plaintiff has spent considerable time and effort disputing the false information with credit reporting agencies and creditors, monitoring his credit, and attempting to mitigate the ongoing damage. Each time Plaintiff applies for credit or a loan, the inaccurate information resurfaces and creates uncertainty about his financial future. The continued presence of false negative data on Plaintiff's report has caused Plaintiff to lose confidence in the fairness of the credit system and to suffer tangible harm to his personal and professional life.

44. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

45. Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

**COUNT I**
**FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY**
**15 U.S.C. § 1681e(b)**
**AGAINST EQUIFAX**

46. Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-45 as if fully set forth herein.

47. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

48. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate BOA Account information being reported on the Plaintiff's credit report.

49. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681 *et seq.*;

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: September 28, 2026

/s/ Ari H. Marcus
Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
ari@marcuszelman.com
*Attorney for Plaintiff*